## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | | |
|---|---|---|
| **JON COPELAND, ADMINISTRATOR AND PERSONAL REPRESENTATIVE OF THE ESTATE OF MAGGIE COPELAND, DECEASED,** | : | **Case No**. 1:23-cv-01517 |
| | : | Judge James S. Gwin |
| Plaintiff, | : | |
| | : | **PLAINTIFF'S FIRST AMENDED** |
| -vs- | : | **COMPLAINT** |
| | : | |
| **RICHLAND COUNTY, OHIO/ RICHLAND COUNTY BOARD OF COMMISSIONERS** | : | **JURY DEMAND FILED IN ORIGINAL COMPLAINT** |
| 50 Park Avenue East Mansfield, Ohio 44902 | : | |
| | : | |
| -and- | : | |
| **J. STEVE SHELDON** | : | |
| 597 Park Avenue East Mansfield, Ohio 44905 *Individually and in his official capacity as the Richland County Sheriff* | : | |
| | : | |
| -and- | : | |
| **CHUKA D. ONYENEKE, MD C/O RICHLAND COUNTY JAIL** | : | |
| 79 East 2nd Street Mansfield, Ohio 44902 *Individually and in his official capacity as a Richland County Jail Physician and Jail Medical Director* | : | |
| | : | |
| -and- | : | |
| **ADVANCED CORRECTIONAL HEALTHCARE, INC. C/O CT CORPORATION SYSTEMS STATUTORY AGENT** | : | |
| 1300 East 9th Street Cleveland, Ohio 44114 | : | |

1

           -and-                        :

**MADISON CONRAD HOGIE, LPN**    :
**KELLY WEAVER, LPN**
**CHRISTINA WILLIAMS, LPN**    :
**CHRISTOPHER SMITH, LPN**
**C/O ADVANCED CORRECTIONAL**    :
**HEALTHCARE INC.**
720 Cool Springs Blvd., Suite 100    :
Franklin, Tennessee 37067
                               :

           -and-                        :

**CAPTAIN CHRIS BLUNK**    :
**C/O RICHLAND COUNTY JAIL**
79 East 2nd Street
Mansfield, Ohio 44902    :
*Individually and in his official capacity as a*
*Richland County Sheriff Captain*    :

           -and-                        :

**DEPUTY CHRISTY DORSEY**    :
**C/O RICHLAND COUNTY SHERIFF'S**
**OFFICE**    :
597 Park Avenue East
Mansfield, Ohio 44905    :
*Individually and in his official capacity as a*
*Richland County Sheriff's Deputy*    :

           -and-                        :

**DEPUTY ERIC BRUMBAUGH**    :
**C/O RICHLAND COUNTY SHERIFF'S**
**OFFICE**    :
597 Park Avenue East
Mansfield, Ohio 44905    :
*Individually and in his official capacity as a*
*Richland County Sheriff's Deputy*    :

           -and-                        :

**ANGELA RILEY, LSW**    :
**C/O CATALYST LIFE SERVICES**
                               :

**C/O THE CENTER FOR INDIVIDUAL**
**AND FAMILY SERVICES, INC.**                    :
*Statutory Agent for Catalyst Life Services*
741 Scholl Road                                  :
Mansfield, Ohio 44907
                                                 :

          -and-                                  :

**CATALYST LIFE SERVICES**
**C/O THE CENTER FOR INDIVIDUAL**                :
**AND FAMILY SERVICES, INC.**
*Statutory Agent for Catalyst Life Services*     :
741 Scholl Road
Mansfield, Ohio 44907                            :

          -and-                                  :

**JOHN DOE 1-10, any physicians, nurses,**       :
**correctional officers, hospitals,**
**corporations, health care professionals or**  :
**other entities, that provided deliberately**
**indifference and/or negligent medical,**       :
**health or jail care to MAGGIE**
**COPELAND, Individually or by and**             :
**through their employees and/or agents**
**Names and Addresses Unknown.**                 :

                    Defendants.                  :

___

## INTRODUCTION

1.      This civil rights and medical negligence action challenges Defendants' failure to provide adequate medical care to Maggie Copeland while she was incarcerated at the Richland County Jail between May 5, 2022 and May 11, 2022. Defendants failed to treat her for obvious and severe signs of drug withdrawal. Maggie Copeland vomited for four and a half days, experienced a seizure, could not eat, and displayed other obvious signs of medical distress before she died. Defendants' failure to provide her with appropriate medical treatment caused her severe pain and extended suffering. Jon Copeland, father of Maggie Copeland, brings this action as

3

administrator of Maggie Copeland's estate to secure fair compensation and hopefully encourage Defendants to provide appropriate treatment for future inmates suffering from drug and alcohol addiction in the future.

**JURISDICTION**

2.      Jurisdiction over claims brought under the Civil Rights Act of 1871 is conferred on this Court by 28 U.S.C. §§ 1331, 1343(3) and (4). Jurisdiction over the state law claims is conferred by 28 U.S.C. §1367. Venue is proper in this division.

**PARTIES**

3.      Plaintiff reincorporates each and every allegation contained within Paragraphs One (1) through Two (2) above as if fully rewritten herein.

4.      Jon Copeland is the father of Maggie Copeland who is deceased. Jon Copeland brings this suit as the Administrator of the Estate of Maggie Copeland for the benefit of the next of kin and bring this survival action as well as wrongful death action against the Defendants.

5.      Defendant Richland County/Richland County Board of Commissioners ("Richland County") is a unit of local government established under the laws of the State of Ohio. The County is sued through the Richland County, Ohio Board of County Commissioners who are named only in their official capacity pursuant to O.R.C. § 305.12. Defendant is a "person" under 42 U.S.C. § 1983 and at all times relevant to this case acted under color of law.

6.      Defendant Sheriff J. Steve Sheldon ("Sheriff Sheldon") is and was at all times relevant to this action the duly elected Sheriff of Richland County, Ohio. Defendant is a "person" under 42 U.S.C. § 1983 and at all times relevant to this case acted under color of law. He is sued in his individual and official capacities.

7.      Defendant Captain Chris Blunk ("Captain Blunk") is and was at all times relevant to this action the Captain at the Richland County Jail. Defendant is a "person" under 42 U.S.C. §

4

1983 and at all times relevant to this case acted under color of law. He is sued in his individual and official capacities.

8.      Defendant Deputy Christy Dorsey ("Deputy Dorsey") is and was at all times relevant to this action an employee with the Richland County Sheriff's Office. Defendant is a "person" under 42 U.S.C. § 1983 and at all times relevant to this case acted under color of law. She is sued in her individual and official capacities.

9.      Defendant Deputy Eric Brumbaugh ("Deputy Brumbaugh") is and was at all times relevant to this action an employee with the Richland County Sheriff's Office. Defendant is a "person" under 42 U.S.C. § 1983 and at all times relevant to this case acted under color of law. He is sued in his individual and official capacities.

10.      Defendant Chuka Onyeneke MD ("Dr. Onyeneke") is, and was at all times relevant to this action, the jail physician and medical director serving Richland County at the Richland County Jail ("the Jail"). Defendant is a "person" under 42 U.S.C. § 1983 and at all times relevant to this case acted under color of law. He is sued in his individual and official capacities.

11.      Defendant Advanced Correctional Healthcare, Inc. ("ACH") is licensed to do business in the state of Ohio and its corporate office is located in Franklin, Tennessee. At all times relevant to this case, Defendant ACH contracted with Defendant Richland County to provide medical care to the inmates of the Jail. Defendant is a "person" under 42 U.S.C. § 1983 and at all times relevant to this case acted under color of law.

12.      Defendant Madison Conrad Hogie, L.P.N. ("Nurse Hogie"), is an employee of Defendant ACH and is duly licensed to practice nursing by and in the State of Ohio. Defendant is a "person" under 42 U.S.C. § 1983 and at all times relevant to this case acted under color of law. She is sued in her individual and official capacities.

5

13.     Defendant Kelly Weaver, L.P.N. ("Nurse Weaver"), is an employee of Defendant ACH and is duly licensed to practice nursing by and in the State of Ohio. Defendant is a "person" under 42 U.S.C. § 1983 and at all times relevant to this case acted under color of law. She is sued in her individual and official capacities.

14.     Defendant Christina Williams, L.P.N. ("Nurse Williams"), is an employee of Defendant ACH and is duly licensed to practice nursing by and in the State of Ohio. Defendant is a "person" under 42 U.S.C. § 1983 and at all times relevant to this case acted under color of law. She is sued in her individual and official capacities.

15.     Defendant Christopher Smith, L.P.N. ("Nurse Smith"), is an employee of Defendant ACH and is duly licensed to practice nursing by and in the State of Ohio. Defendant is a "person" under 42 U.S.C. § 1983 and at all times relevant to this case acted under color of law. He is sued in her individual and official capacities.

16.     Defendant Angela Riley, LSW ("Defendant Riley"), is an employee of Catalyst Life Services and is a duly licensed social worker within the State of Ohio. Defendant Riley is a "person" under 42 U.S.C. §1983 and at all times relevant herein acted under color of law. She is sued in her individual and official capacities.

17.     Defendant Catalyst Life Services is licenses to do business within the State of Ohio and has a principal place of business located within Richland County, Ohio. At all times relevant herein, Defendant Catalyst Life Services provided social work and mental health services within the Richland County Jail for inmates of the jail. Defendant is a "person" under 42 U.S.C. § 1983 and at all times relevant to this case acted under color of law.

18.     Defendants John Doe #1-10, names and addresses unknown, were physicians, nurses, Richland County correctional officers, hospitals, corporations, or other entities that

provided deliberately indifferent and/or negligent medical, health, or jail care, individually or by and through their employees and/or agents, actual or ostensible, to Maggie Copeland. Plaintiff has been unable to identify the names and/or identities of Defendants John Doe #1-10 through the exercise of reasonable diligence. Plaintiff reserves the right to substitute a named Defendant for such John Doe(s) upon discovery of the name and/or identity of any such individual(s) who may have fallen below accepted standards of care.

19.     Sheriff Sheldon and Captain Blunk, who are sued in their individual official and employee/agent capacities, were at all times relevant to this Complaint duly appointed and acting officials/employees of Richland County acting under color of law, to wit, under color of the statutes, ordinances, regulation, policies, custom, and wages of Ohio and/or Richland County.

## FACTS

20.     Plaintiff reincorporates each and every allegation contained within Paragraphs One (1) through Nineteen (19) above as if fully rewritten herein.

21.     Maggie Copeland was arrested on February 10, 2022 when an arrest warrant was issued by the Mansfield Municipal Court for her failure to appear to probation.

22.     She was on probation for her conviction of violating ORC 2925.12 – Possession of Drug Abuse Instruments, a misdemeanor of the first degree.

23.     Maggie Copeland was to serve fifteen (15) days in the Jail to start May 6, 2022.

24.     Maggie Copeland appeared at the Jail to begin her sentence on May 5, 2022 at approximately 5:20 P.M. She was placed in a holding cell until she could be booked in at approximately 11:00 P.M.

25.     During the booking process, Maggie Copeland was asked questions by the Deputy Dorsey, Deputy Brumbaugh, and Nurse Hogie.

7

26.    During the intake screening, Maggie Copeland advised Deputy Dorsey, Deputy Brumbaugh, and Nurse Hogie that she was a heroin addict who used approximately two (2) grams of heroin daily and that she last used two (2) grams of heroin that morning and that she would experience withdrawals from heroin.

27.    Maggie Copeland was read and agreed that the Jail could treat any medical condition requested.

28.    Maggie Copeland was also advised that the Jail would not deny her any medical, dental, or mental health services.

29.    During the booking process, a mental health referral was made. However, no assessment was completed, even though the Defendants were advised of Maggie Copeland's heroin addiction.

30.    During the booking process, Deputy Dorsey, Deputy Brumbaugh, and Nurse Hogie failed to complete the "Medical Problem List" form and noted "Medical intake refused" and "Medical history unknown."

31.    Maggie Copeland's medical history was not "unknown" as her medical history was on file with the Jail from prior incarcerations and personnel of the Jail failed to retrieve her records.

32.    From the beginning of Maggie Copeland's incarceration on May 5, 2022, she was experiencing obvious signs of drug withdrawal but the Jail and Nurse Hogie refused to address Maggie's medical problems.

33.    ACH and its employees, Nurse Hogie, Nurse Weaver, Nurse Williams, Nurse Smith, and Dr. Onyeneke refused to recognize Maggie's serious medical problems due to withdrawals and refer her to medical treatment, and/or take care of her obvious medical needs.

34.     On May 5, 2022 Maggie Copeland was taken to Housing Unit 3D11 at 11:54 PM and put in a cell with two (2) other inmates.

35.     In the early morning on May 6, 2022 Maggie Copeland was interviewed by Nurse Hogie concerning her health and Nurse Hogie referred Maggie to mental health because of drugs, noting that she used heroin (2 grams) daily.

36.     Maggie Copeland was seen at the Jail by Defendant Angela Riley LSW, a licensed social worker through Defendant Catalyst Life Services. However, no mental health exam took place and no treatment or plan was instituted.

37.     Maggie continued to experience serious withdrawal symptoms: vomiting, defecating, acting out, yelling, and an increased inability to care for herself. Her cellmate had to clean up her vomit and pick her up from the floor to put her to bed because Maggie was unable to do it herself.

38.     Finally, withdrawal protocol was started by the Jail personnel on May 8, 2022.

39.     The Jail records show that Maggie Copeland started taking the following prescribed medication from Dr. Onyeneke at 8:00 AM: Vistaril, 25mg, twice a day; Bentyl, 20mg, twice a day; Clonidine, 0.2mg, twice a day. At 11:00 AM, it was further noted that Maggie had diarrhea.

40.     The same medication was taken again by Maggie at 6:00 PM on May 8, 2022.

41.     On May 8, 2022 at 6:39 PM, Maggie was moved from 3D11 to a medical cell 1B24 "due to withdrawals."

42.     On May 8, 2022 at 7:35 PM, a urine test was conducted on Maggie Copeland. The results of the test concluded that Maggie tested positive for cocaine, morphine, amphetamine, methamphetamine, and methadone. Maggie tested negative for marijuana, barbiturates, benzodiazepine, oxycodone, PCP, antidepressants, and adulterants.

43.     Conversely, the Jail records showed that at 7:35 PM on May 8, 2022, the staff notified Dr. Onyeneke who ordered the withdrawal protocol.

44.     If these jail records are correct, this would mean that Maggie was started on the "medication protocol for withdrawal" twelve (12) hours before Dr. Onyeneke was notified and placed the order.

45.     Approximately one (1) hour after, Maggie was transferred to medical cell 1B24, she was transferred to medical cell 1B22 and allegedly diagnosed with lice.

46.     The following day on May 9, 2022 at 11:00 AM, Nurse Weaver noted that Maggie continued to scream randomly, hit the cell door, throw food, and trash out the food flap when staff opened it and the protocol medications were taken with difficulty.

47.     On May 9, 2022 around 4:30 PM, Maggie threw her food tray on the floor, yelled occasionally demanding "let me out", refused any assistance with showering, and laid with her eyes closed while ignoring Nurse Weaver.

48.     The following day, May 10, 2022, Maggie's physical and mental health continued to worsen. She became more combative and incoherent.

49.     Maggie's hair was very long (below her waist) and was her pride. Consequently, Maggie would never knowingly or willingly ask someone to shave her head.

50.     On May 10, 2022 at 11:55 PM, Maggie was in medical cell 1B22 in complete drug withdrawal. Nurse Hogie claimed that at that time, Maggie requested to have her hair cut off.

51.     Nurse Hogie then maliciously cut all of Maggie's hair off. A few minutes later, Nurse Hogie reported that she had to clean Maggie and her cell because she was vomiting.

52.     After Nurse Hogie cleaned Maggie and her cell, Maggie was left unattended.

53.     The nurses of the Jail were supposed to check on Maggie at least every hour.

54.     From the time Nurse Hogie cut Maggie's hair (approximately 11:55 PM on May 10, 2022) until Maggie was found dead in her cell, Nurse Hogie only went in her cell once (at 4:36 AM on May 11, 2022) for approximately ten (10) seconds.

55.     Nurse Hogie filed a false report that she checked on Maggie every hour (after midnight) when truthfully based on video surveillance, she only checked on her one (1) time at 4:36 AM for approximately ten (10) seconds.

56.     On May 11, 2022 at approximately 7:07 AM, Correctional Officer Collin Peggs was collecting food trays from Maggie (in medical cell 1B22) when he noticed Maggie had not eaten anything from the food tray. Officer Peggs tried to get Maggie's attention but she did not respond. Maggie was covered with a blanket, naked, with vomit coming from her mouth and Officer Peggs could not see her breathing.

57.     On May 11, 2022 at 7:08 AM, Officer Peggs contacted Nurse Williams who entered Maggie's cell and checked her pulse. Nurse Williams could not get a pulse and an emergency squad was called at approximately 7:11 AM.

58.     Nurse Smith, Nurse Hogie, and Nurse Williams started CPR for Maggie but she was unresponsive.

59.     The Automated External Defibrillator ("AED") powered on at 7:11 AM, and advised no shock, start CPR, but no shocks were delivered, and the CPR pads were removed at 7:16 AM. Lieutenant Douglas arrived on the scene at 7:13 AM.

60.     EMTs arrived on the scene at 7:15 AM. The EMTs left the scene with Maggie Copeland on the stretcher at 7:17 AM. The squad left the Jail with Maggie at approximately 7:21 AM with escort Officer Amanda Paxton. Maggie Copeland was pronounced dead at OhioHealth Mansfield Hospital at 7:42 AM on May 11, 2022.

11

61.     Nurse Hogie, Nurse Weaver, Nurse Williams, ACH, Catalyst Life Services, and employees of the Jail failed to monitor and supervise care for Maggie's basic needs as well as her severe medical needs.

62.     While Maggie was left unmonitored and in critical medical condition, she died in the early morning hours of May 11, 2022 lying naked on her cell floor.

63.     Nurse Hogie, Nurse Weaver, Nurse Williams, employees of ACH, employees of Catalyst Life Services, and correctional officers of Richland County Jail all witnessed Maggie's strange actions and her serious medical condition but yet failed to provide Maggie with the necessary and appropriate medical care.

64.     In order to cover up their misconduct, the Defendants jointly agreed and/or conspired with one another to prepare and file false, misleading, inaccurate, and incomplete official reports and give false, incomplete, and misleading versions of the events to their superiors and to the public.

65.     The actions of the Defendants were taken jointly, maliciously, recklessly, and in concert with shared intent.

66.     Defendants' actions as described in this Complaint were without probable cause, unjustified, objectively unreasonable, and constitute deliberate indifference.

67.     Defendants engaged in willful, wanton, reckless, and/or negligent conduct.

68.     An autopsy was performed and showed that Maggie Copeland died from dehydration with renal failure. It was also noted that she had contusions of the left upper extremity and lower extremities. Also noted were abrasions of the knees, left leg, right hand, and right wrist.

69.     Defendants' conduct was the direct, actual, and proximate cause of Maggie Copeland's death.

12

70. As a direct and proximate result of Defendants' conduct, Maggie Copeland sustained severe physical and psychological injuries, pain and suffering, and ultimately died.

71. The injuries and death suffered by Maggie Copeland were preventable had Defendants not engaged in illegal conduct in violation of Maggie's fundamental rights.

72. Throughout Maggie's entire incarceration at the jail, she was in drug withdrawal.

73. Drug withdrawal is a serious medical condition requiring appropriate and necessary medical care.

74. Nurse Hogie, Nurse Weaver, Nurse Williams, Nurse Smith, and Dr. Onyeneke knew that Maggie was experiencing drug withdrawal between May 5, 2022 and May 11, 2022 but yet they failed to examine her, take her vitals, assess her, consult with any physician and/or initiate the drug withdrawal protocol until May 8, 2022. They failed to perform the necessary protocols Maggie needed in order to treat her withdrawal symptoms.

75. The frequent vomiting experienced by Maggie was a known symptom of drug withdrawal. Nurse Hogie, Nurse Weaver, Nurse Williams, Nurse Smith, Dr. Onyeneke, and social worker Angela Riley knew or should have known this symptom posed a substantial risk of serious harm to Maggie and to patients suffering from withdrawal.

76. The conduct of Nurse Hogie, Nurse Weaver, Nurse Williams, Nurse Smith, Dr. Onyeneke, and social worker Angela Riley was negligent, knowing, intentional, reckless, wanton and deliberately indifferent to the serious medical needs of Maggie Copeland.

77. In 2022, it was foreseeable that inmates at the Jail would experience drug and alcohol withdrawal and need treatment for those withdrawal symptoms.

78.     At all times relevant to this case the need to provide treatment to inmates experiencing withdrawal from alcohol and drugs, including heroin, was obvious and known to all of the Defendants.

79.     Prior to the death of Maggie Copeland, numerous inmates had experienced drug and/or alcohol withdrawal at the Jail. Those inmates often experienced vomiting, elevated vitals, delusions, seizures, other severe physical symptoms, and even death.

80.     Heroin abuse and withdrawal was a public health problem known to all Defendants and to medical providers throughout Richland County in 2022.

81.     Defendant ACH was contracted by Defendant Richland County/Richland County Board of Commissioners to provide all medical services at the Jail.

82.     At all times relevant to this case, Defendant ACH was under contract to provide all medical services to the inmates at the Jail.

83.     Defendant Catalyst Life Services, upon information and belief, was contracted by Defendant Richland County/Richland County Board of Commissioners to provide mental health and social work services to inmates at the Jail.

84.     At all times relevant to this matter, Defendant Catalyst Life Services was under contract to provide mental health, crisis intervention and social work services to the inmates at the Jail.

85.     On information and belief at all times relevant to this case, inmates at the Jail suffering from alcohol and drug withdrawal were not adequately treated for their withdrawal symptoms. As a result, these inmates experienced unnecessarily severe symptoms that could have been abated with proper treatment.

14

86.     At all times relevant to this case, Defendants Sheriff Sheldon, Captain Blunk, and Dr. Onyeneke were the policymakers for Richland County with respect to the delivery of medical services, mental health services, and health care at the Jail.

87.     On information and belief, and at all times relevant to this case, the jail physician and medical director responsible for clinical services at the Jail was Dr. Onyeneke. He approved medical policies, approved implementation of policies, trained staff, supervised staff, provided treatments to inmates, and was responsible for overall clinical treatment of inmates at the Jail.

88.     At all times relevant to this case, ACH, Dr. Onyeneke, and Catalyst Life Services were also policymakers for Richland County with respect to the delivery of medical services, mental health care services, and health care at the Jail.

89.     At all times relevant to this case, Defendants ACH, Dr. Onyeneke, and Catalyst Life Services were joint participants with Defendants Sheriff Sheldon and Captain Blunk with respect to establishing policy, practice, procedures, customs, and usages regarding delivery of medical care, mental health care, and health care at the Jail.

90.     Maggie Copeland was never personally examined by or assessed by Dr. Onyeneke or any other physician at the Jail during the entire period she was in the Jail suffering from drug withdrawal.

91.     The failure to have Maggie examined by a physician was caused by the practices, policies, and customs of Defendants Richland County/Richland County Board of Commissioners, Sheriff Sheldon, Captain Blunk, ACH, Dr. Onyeneke, and Catalyst Life Services.

92.     The failure by the Defendants to treat the withdrawal symptoms of Maggie was negligent, knowing, intentional, reckless, wanton, and with deliberate indifference to the serious medical and health needs of Maggie Copeland.

93.      Between May 5, 2022 and May 11, 2022, Defendants failed to take any minimally adequate measures to treat the foreseeable and dangerous withdrawal symptoms experienced by Maggie Copeland

94.      Defendants Richland County/Richland County Board of Commissioners, Sheriff Sheldon, Captain Blunk, ACH, Dr. Onyeneke and Catalyst Life Services had policies, practices, customs, and usages that caused prisoners to suffer serious symptoms, untreated and/or inadequately treated, as a result of their drug withdrawal. Such policies were the moving force behind the injuries suffered by Maggie in this case which caused her death. By following those policies, practices, customs, and usages, Defendants were deliberately indifferent to the serious medical needs, mental health needs, and health needs of Maggie in this case.

95.      Defendants Richland County/Richland County Board of Commissioners, Sheriff Sheldon, Captain Blunk, ACH, Dr. Onyeneke, and Catalyst Life Services maintained constitutionally deficient policies, practices, or customs that subjected Jail inmates and detainees like Maggie Copeland to a substantial risk of serious harm and that were a moving force in causing the harms alleged in this lawsuit. These included, but were not limited to: (1) a practice, policy, or custom of having its nurses place acutely ill inmates on "medical watch," when, in fact, such inmates were only looked at periodically by the Jail's correctional officers who lacked the qualifications, training, skill, licensure, schooling, or experience to evaluate inmates' medical conditions; (2) deficient customs, practices, policies, and procedures for recognizing and responding appropriately to the Jail inmates' and detainees' urgent medical and mental health needs, including situations in which a confined person's illness was so severe that he or she needed to be transported to a hospital for higher level care instead of remaining in the Jail where higher level care was not feasible; (3) a policy, practice, or custom of allowing the Jail inmates with

serious physical and mental health needs to go untreated or to receive treatment that was so inadequate as to be constitutionally infirm; and (4) a policy, practice, or custom of failing to ensure that nurses adequately fulfilled their gatekeeper roles by communicating inmates' and detainees' acute medical needs to higher level providers and otherwise taking action to ensure that such individuals were adequately evaluated and treated by medical professionals with the skill, training, experience, and licensure to do so.

96.  Defendants Richland County/Richland County Board of Commissioners, Sheriff Sheldon, Captain Blunk, ACH, Dr. Onyeneke, and Catalyst Life Services failed to adequately train and/or supervise its personnel in providing constitutionally adequate care to Jail inmates and detainees. This includes inadequate training and supervision regarding (1) recognizing and responding appropriately to the Jail inmates' and detainees' serious medical needs, including situations in which a confined person's illness was so severe that he or she needed to be transported to a hospital for higher level care instead of remaining in the Jail where higher level care was not feasible and where inmates and other detainees were therefore unfit to remain confined; (2) communicating with other health care providers regarding serious inmate-patient needs; (3) communicating with the Jail staff regarding serious inmate-patient needs and ensuring that inmates with serious illnesses were evaluated and treated in a manner that would not cause their condition to deteriorate; and (4) ensuring compliance with the duty to provide inmates and detainees with constitutionally adequate medical care and mental health care.

97.  The Defendants failed to establish, draft, train staff, implement, and supervise staff regarding additional policies, practices, customs, and usages that were obviously needed to adequately treat the needs of inmates suffering from alcohol and/or drug withdrawal.

17

98.     The Defendants' failures were negligent, reckless, knowing, intentional, willful, wanton, and deliberately indifferent, and all in contravention of the applicable standard of care.

99.     Defendants Richland County/Richland County Board of Commissioners, Sheriff Sheldon, Captain Blunk ACH, Dr. Onyeneke, and Catalyst Life Services were also deliberately indifferent to the serious needs of Maggie by failing to train and supervise staff and implement jail policies, practices, customs, and usages that adequately addressed the obvious known physical and mental health and safety risks to inmates entering the jail while addicted to heroin and other drugs and likely to go into withdrawal without proper medical treatment and custody management.

100.    The conduct of the Defendants outlined above shocks the conscious, violates the standards of all decency in evolving society, and betrays the trust that inmates, their families, and the public place in Jail staff when they deprive inmates of the means to take care of themselves making them dependent on Jail staff for all their basic needs including medical and health care.

## HARM TO MAGGIE COPELAND AND HER FAMILY

101.    Plaintiff reincorporates each and every allegation contained within Paragraphs One (1) through One Hundred (100) above as if fully rewritten herein.

102.    As a direct and proximate result of Defendants' actions, Maggie Copeland experienced pain, emotional distress, and suffering over five (5) days, eventually resulting in her death.

103.    As a further direct and proximate result of Maggie Copeland's wrongful death, her survivors and/or heirs including her fifteen-year-old son have suffered permanent damages, including but not limited to, the loss of her support, services, and society, including lost companionship, care, assistance, attention, protection, advice, guidance, counsel, instruction, training, education, and the loss of prospective inheritance.

18

104.    As a further direct and proximate result of Maggie Copeland's wrongful death, her survivors, next of kin, and/or heirs have expended money on her internment, and suffered permanent damages, including but not limited to, grief, depression, and severe emotional distress.

## FIRST CAUSE OF ACTION
### *42 U.S.C. §1983*

105.    Plaintiff reincorporates each and every allegation contained within Paragraphs One (1) through One Hundred and Four (104) above as if fully rewritten herein.

106.    The Defendants have, under color of state law, deprived Maggie Copeland of rights, privileges, and immunities secured by the Eighth and Fourteenth Amendments to the United States Constitution, including but not limited to the right to adequate medical care, mental health care and health care as a prisoner with a right to be free of cruel and unusual punishment.

107.    Defendants Dr. Onyeneke, Nurse Hogie, Nurse Williams, Nurse Weaver, Nurse Smith, and Angela Riley were each deliberately indifferent to Maggie's serious medical and mental health needs. Each knew that Maggie Copeland was suffering from severe drug withdrawal. Each knew that persons suffering from drug withdrawal have a serious medical need. Each failed to provide the needed medical attention to Maggie Copeland.

108.    Defendants Richland County/Richland County Board of Commissioners, Sheriff Sheldon, Captain Blunk, ACH, Dr. Onyeneke and Catalyst Life Services failed to adequately train and supervise the jail corrections officers and medical staff in the intake, assessment, and physical and mental health treatment of detainees who arrive at the Jail at risk of drug withdrawal, including Maggie Copeland.

109.    The rules, regulations, customs, policies, procedures, and usages of Defendants Richland County/Richland County Board of Commissioners, Sheriff Sheldon, Captain Blunk, ACH, Dr. Onyeneke and Catalyst Life Services regarding the diagnosis, physical and mental health

treatment, and management of persons in alcohol and drug withdrawal were inadequate and unreasonable and were the moving force behind the constitutional deprivations suffered by Maggie Copeland.

## SECOND CAUSE OF ACTION
### *Medical Negligence*

110.    The Plaintiff incorporates the allegations contained in Paragraphs One (1) through One-Hundred Ten (110) as if fully rewritten herein.

111.    Defendants, individually or by and through actual or ostensible employees or agents, were professionally negligent and fell below accepted standards of medical care. (*See* Affidavit of Merit from Dr. Paul Gabriel incorporated by reference herein and attached hereto as Exhibit A).

112.    Defendants, individually or by and through actual or ostensible employees or agents, failed to exercise the degree of care of reasonably skillful, prudent, and careful physicians, specialists, and/or other health care professionals under the same or similar circumstances by, among other things, failing to timely and properly diagnose and treat the drug withdrawal symptoms experienced by Maggie Copeland. (*See* Affidavit of Merit from Dr. Paul Gabriel incorporated by reference herein and attached hereto as Exhibit A).

113.    As Medical Director, Dr. Onyeneke failed to ensure that adequate policies were in place at the Jail to appropriately identify, diagnose, and treat the physical and mental health needs of inmates entering the Jail who were at risk of experiencing alcohol and drug withdrawal, including drug withdrawal symptoms.

114.    Dr. Onyeneke also failed to train and supervise the medical staff to provide services consistent with the standard of care. Dr. Onyeneke permitted the nurses to provide medical services

without his supervision and beyond that permitted by law given their training, credentials, and licensing.

115.     As a direct and proximate result of the negligence of Defendants, Maggie Copeland sustained permanent and severe injuries. (*See* Affidavit of Merit from Dr. Paul Gabriel incorporated by reference herein and attached hereto as Exhibit A). Said injuries caused her much pain, suffering, and mental anguish, and thereby denied her a normal way of life, and resulted in loss of life expectancy.

116.     As a further direct and proximate result of the negligence of Defendants, the Estate of Maggie Copeland has incurred hospital, medical, funeral, internment, and other related expenses.

## THIRD CAUSE OF ACTION
### *Survival Action (O.R.C. §2305.21)*

117.     The Plaintiff incorporates the allegations contained in Paragraphs One (1) through One-Hundred Sixteen (116) as if fully rewritten herein.

118.     After Maggie Copeland was admitted to the Jail, Defendants ACH, Sheriff Sheldon, Captain Blunk, Dr. Onyeneke, Nurse Williams, Nurse Hogie, Nurse Smith, Nurse Weaver, Angela Riley, Catalyst Life Services and John Does acted in a reckless, negligent, and willful manner and breached their duty to provide adequate medical care, mental health care, and health care and to protect Maggie Copeland during her incarceration, proximately causing injury to Maggie Copeland and her death, all in violation of Ohio law.

119.     As a direct and proximate cause of these acts by Defendants, Maggie Copeland sustained severe injuries to various parts of her body, causing here to endure extreme pain, mental and physical anguish, and deterioration of her physical health culminating in her death on May 11, 2022. As a result, Jon Copeland, as Administrator of the Estate of Maggie Copeland, brings this

survival claim on behalf of Decedent Maggie Copeland to cover expenses and for the severe pain and suffering she endured before her death.

**FOURTH CAUSE OF ACTION**
*Wrongful Death*

120.    The Plaintiff incorporates the allegations contained in Paragraphs One (1) through One-Hundred Nineteen (119) as if fully rewritten herein.

121.    As a direct and proximate result of the negligent, reckless, and/or willful conduct of Defendants, as set forth above, Maggie Copeland suffered a wrongful death on May 11, 2022, resulting in damages recoverable under O.R.C. § 2125.02.

122.    As a further direct and proximate result of the negligent, reckless, and/or willful conduct of the Defendants and the wrongful death of Maggie Copeland, her next of kin, especially her fifteen-year-old son have suffered mental anguish and pecuniary and non-pecuniary losses, including loss of support, services, care, assistance, attention, protection, advice, guidance, counsel, instruction, training, and education.

123.    As a further direct and proximate result of the negligent, reckless, and/or willful conduct of the Defendants and the wrongful death of Maggie Copeland, the Estate of Maggie Copeland has incurred reasonable burial and funeral expenses.

**JURY DEMAND**

124.    Plaintiff hereby demands a trial by jury as provided by law.

**RELIEF REQUESTED**

**WHEREFORE,** Plaintiff Jon Copeland, Administrator and Personal Representative of the Estate of Maggie Copeland, Deceased, hereby respectfully requests that this Court for the following relief:

a. Issue an order granting Plaintiff judgment against Defendants, finding that Defendants violated Maggie Copeland's constitutional rights under the Eighth/Fourteenth Amendments to the United States Constitution and that Defendants are liable to Plaintiff for all damages resulting from these violations, including damages for Maggie Copeland's conscious pain and suffering and loss of life and related damages;

b. Issue an order granting Plaintiff judgment against Defendants, finding that Defendants caused Maggie Copeland's wrongful death and that Defendants are liable to Plaintiff for all damages resulting from these violations;

c. Grant an award of compensatory damages to Plaintiff against all Defendants, jointly and severally;

d. Grant an award of punitive damages to Plaintiff against all Defendants, jointly and severally;

e. Grant an award of reasonable attorney's fees and costs to Plaintiff pursuant to 42 U.S.C. § 1988; and

f. Grant an award of such other and further relief as this Court may deem appropriate.

Respectfully submitted,

**J.C. Ratliff** (0027898)
**Rocky Ratliff** (0089781)
**Kyle Phillips** (0101185)
200 West Center Street
Marion, OH 43302
Telephone: 740-383-6023
Facsimile: 740-383-2066
Email: attorney.ratliff@gmail.com

## CERTIFICATE OF SERVICE

I hereby certify that a true and accurate copy of the foregoing **Plaintiff's First Amended**

**Complaint** has been served via ☐ Regular U.S. Mail; ☐Electronic Mail (email); ☐ Facsimile;

☐ Clerk's Electronic Filing System; or ☒ PACER CM/ECF System on Friday, January 5, 2024

upon the following:

**David A. Riepenhoff** (0075089)
FISHEL DOWNEY ALBRECHT & RIEPENHOFF
7775 Walton Parkway, Suite 200
New Albany, OH 43054
Email: ddowney@fisheldowney.com
        driepenhoff@fisheldowney.com

*Counsel for Defendants Richland County,*
*Ohio/Richland County Board of*
*Commissioners, J. Steve Sheldon; Captain*
*Chris Blunk C/O Richland County Jail,*
*Deputy Christy Dorsey C/O Richland County*
*Sheriff's Office, and Deputy Eric Brumbaugh*
*C/O Richland County Sheriff's Office*

**James A. Climer** (0001532)
**John D. Pinzone** (0075279)
**Zachary W. Anderson** (0095921)
100 Franklin's Row
34305 Solon Road
Cleveland, OH 44139
Email: jclimer@mrrlaw.com
        jpinzone@mrrlaw.com
        zanderson@mrrlaw.com

*Counsel for Defendant Madison Conrad*
*Hogie, RN*

**Brian T. Gannon** (0077442)
**Jonathan H. Krol** (0088102)
REMINGER CO., L.P.A.
200 Public Square, Suite 1200
Cleveland, Ohio 44114
Email: bgannon@reminger.com
        jkrol@reminger.com

*Attorneys for Defendants Advanced*
*Correctional Healthcare, Inc., Chuka*
*Onyeneke, MD, Kelly Weaver, LPN, Christina*
*Williams, LPN, and Christopher Smith, LPN*

**J.C. Ratliff** (0027898)
**Rocky Ratliff** (0089781)
**Kyle Phillips** (0101185)

*Attorneys for the Plaintiff.*

24